Opinion issued on April 3, 2003



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00382-CR




SCOTT BEAVER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 864396




O P I N I O N
          Appellant, Scott Beaver, pleaded guilty to possession of marihuana after his
pretrial motion to suppress evidence was denied. Appellant was sentenced by the trial
court to 180 days’ confinement. In a single point of error, appellant argues the trial
court erred in denying his motion to suppress evidence.
          We affirm.
Facts
          On December 22, 2000, Houston Police Officer Dutch Lane set up a
surveillance of appellant’s apartment for the purpose of investigating alleged
marihuana sales. After watching the apartment for about five minutes, Lane observed
a truck stopping at the apartment. Lane testified that he went up the stairs and
knocked on the apartment door while two other Houston Police Officers waited at the
bottom of the stairs. Appellant answered the door, and, as Lane asked him if anyone
else was inside, another man, Robert Porter, appeared behind appellant and
announced his presence. Lane testified that, as he was standing in the doorway, he
could smell burnt marihuana and he could see a device known as a “water pipe,” a
device used to smoke marihuana, on top of the refrigerator.
          Lane told appellant and Porter to go down the stairs with one of the other
police officers. While Lane was still in the doorway, he saw a hand-rolled cigarette
on top of the coffee table that he believed was the source of the burnt marihuana odor. 
Lane did not have a warrant to enter the apartment, but he testified that, not knowing
if anyone was in the apartment, he entered it to make a sweep.


 While Lane was
inside the apartment during the initial entry, he found two potato chips cans, one
containing marihuana seeds, and the other containing partially smoked marihuana
cigarettes. Lane also found marihuana residue on a weight scale in the closet, 
marihuana wrapped in plastic that was within brown paper bags, and marihuana in a
drawer that Lane opened.


 
          Lane testified that, after the initial entry, he obtained the verbal consent of
appellant to search the apartment, and, after a second search, he found small plastic
boxes containing marihuana and marihuana seeds, photographs of marihuana being
grown in various places, a handgun underneath the mattress, and some marihuana that
was in a jar in the kitchen. 
          The record indicates that appellant was outside of the apartment while Lane
was conducting his searches. Appellant testified that, at the time the written consent
was obtained, he was already in handcuffs in the patrol car. 
          Lane obtained appellant’s written consent to search the apartment and a van
outside of the apartment after his second entry into the apartment. Lane testified that
he started to “collect the evidence” after his initial sweep, but upon further
questioning, he stated that it was after obtaining consent and after making a second
entry that he “got the [evidence] I already [sic] seen in the protective sweep.” All of
the searches conducted by the officers were performed without a warrant.
Standard of Review
          Generally, a trial court’s ruling on a motion to suppress is reviewed for an
abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). 
Determinations of probable cause should be reviewed de novo on appeal. Guzman
v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (citing Ornelas v. State, 517 U.S.
690, 699, 116 S. Ct. 1657, 1663 (1996)). If the issue involves the credibility of a
witness, such that the demeanor of the witness is important, then greater deference
will be given to the trial court’s ruling on that issue. Id. The amount of deference
that a reviewing court should give to a trial court’s ruling on a motion to suppress will
depend upon whether the trial court is in a better position to decide the issue before
it. Id. If the issue is one of application of law to facts, and the ultimate resolution of
that issue does not turn on an evaluation of credibility and demeanor of a witness,
then the reviewing court may review that issue de novo. Id. at 89. 
Discussion
          In his sole point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence because the warrantless search of his apartment was
unreasonable. 
           The Texas Constitution provides that:
The people shall be secure in their persons, houses, papers and
possessions, from all unreasonable seizures or searches, and no warrant
to search any place, or to seize any person or thing, shall issue without
describing them as near as may be, nor without probable cause,
supported by oath or affirmation.

Tex. Const. Art. I, § 9. Federal and Texas state courts have held that a police search
of a home without a warrant is presumptively unreasonable. Roth v. State, 917
S.W.2d 292, 299 (Tex. App.—Austin 1995, no pet.) (citing United States v. Karo,
468 U.S. 705, 715, 104 S. Ct 3296, 3303 (1984)). The burden of proof is on the State
to justify the warrantless search of a residence. Brimage v. State, 918 S.W.2d 466,
482 (Tex. Crim. App. 1994). In order for a warrantless search to be justified, the
State must show that it had probable cause at the time the search was made, and that
there were exigent circumstances that made it impracticable to procure a warrant. 
McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991). Exigent
circumstances justifying a warrantless entry include (1) rendering aid or assistance
to persons whom the officers reasonably believe are in need of assistance; (2)
preventing the destruction of evidence or contraband; and (3) protecting the officers
from persons whom they reasonably believe to be present and armed and dangerous. 
Id. at 107 (citing Stewart v. State, 681 S.W.2d 774 (Tex. App.—Houston [14th Dist.]
1984, pet. ref’d)). Protective sweeps, used in situations similar to the third
circumstance listed in McNairy, may be conducted to protect the safety of police
officers or others, and may also justify a warrantless entry. Reasor v. State, 12
S.W.3d 813, 815 (Tex. Crim. App. 2000). Probable cause or exigent circumstances
are not required to justify a warrantless entry where consent has been validly
obtained. Id. 
          We now determine whether the police officers in this case were justified in
entering and searching appellant’s apartment based on the exigent circumstance of
preventing the destruction of evidence.
Prevention of the Destruction of Evidence
          An entry into a house without a warrant may be justified if (1) the police have
probable cause, and (2) there is an exigent circumstance that makes the procurement
of a warrant impracticable. McNairy, 835 S.W.2d at 107. In McNairy, the officers
had discovered drugs and paraphernalia at a residence located on a 10-acre plot of
land. Id. at 103. On the same plot of land, the officers began walking on a path
towards a mobile home, and, as they were within 50 feet of it, they smelled the strong
odor of methamphetamine coming from the home. Id. As they proceeded closer, the
officers heard the back door of the mobile home “thrown open,” and they heard
people running away through the brush. Id. The officers also observed chemicals
used to manufacture methamphetamine stacked inside of the doorway. Id. An officer
entered the mobile home to “see if anybody was still in the trailer.” Id. at 107. 
Having found that no one was in the trailer, the officers obtained a search warrant
from a magistrate before they proceeded to search the mobile home. Id. at 106. The
court held that the officers had probable cause to believe that methamphetamine was
in the mobile home. Id. at 106. The court further held that the officers could have
reasonably believed that one or more persons remained in the trailer, that any persons
remaining in the trailer would have known of the presence of the police, and that the
evidence inside could have been quickly destroyed.


 Id. at 107. The court concluded
that the officers were justified in “entering appellant’s trailer to check for suspects
who might have so destroyed evidence.” Id. at 107. 
          Appellant stipulated at the pretrial hearing that there was probable cause to
search his apartment. The issue remaining is whether exigent circumstances existed
that justified an entry without a warrant. 
          Appellant argues that McNairy does not control in this case because the police
officers manufactured the exigent circumstances. Appellant directs us to the Fifth
Circuit Court of Appeals decision of U.S. v. Richard for support. 994 F.2d 244 (5th
Cir. 1993). In Richard, the officers were conducting surveillance of a hotel room
occupied by suspects. Id. at 246-47. The officers approached the door, knocked, and
announced that they were police officers. Id. at 247. The officers heard the sound
of people talking softly, heard doors or drawers slamming, and footsteps moving
about. Id. The officers kicked the door open and entered the room without a warrant. 
Id. Although the officers claimed that they did not have probable cause to obtain a
warrant, the government conceded on appeal that the officers did have probable
cause. Id. at 248. The court held that the officers could have secured the area around
the room while they waited for a warrant, but because they did not, the officers had
created the exigent circumstances that they wanted to rely on to justify their
warrantless entry. Id. at 249-50. 
          In this case, the officers did not yet have probable cause when they knocked on
the door of the apartment, and, thus, did not have the alternative of approaching with
a warrant. Probable cause in this case developed only after the door was open and
Officer Lane smelled the odor of burnt marihuana, saw the “water pipe” on top of the
refrigerator, and saw the marihuana cigarette on the coffee table from his position at
the open doorway.


 Accordingly, because the police officers in this case did not
already have probable cause when they approached the apartment, and did not have
the alternative option of approaching with a warrant, we hold that Richards is not
applicable. 
          Appellant also contends that McNairy does not apply because the United States
Supreme Court, in Welsh v. Wisconsin, held that, “application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned
when there is probable cause to believe that only a minor offense . . . has been
committed.” 466 U.S. 470, 753, 104 S. Ct. 2091, 2099 (1984). In Welsh, the
defendant was suspected of driving while intoxicated and the officers arrested him in
his home without first obtaining a warrant. 466 U.S. at 740, 104 S. Ct at 2092. In
Wisconsin, at the time of the defendant’s arrest, the offense that the defendant was
suspected of was considered only a civil traffic violation for first time offenders. 466
U.S. at 746, 104 S. Ct. at 2095. The Court held that there were no exigent
circumstances to justify entry because the defendant was only suspected of committing
a minor offense, and the hot pursuit doctrine did not apply because there was no
continuous pursuit of the defendant from the site of the accident. 466 U.S. at 753-54,
104 S. Ct. at 2099. 
          This court has previously distinguished Welsh from cases, such as this one,
where the offense is “jailable.” Winter v. State, 902 S.W.2d 571, 573 (Tex.
App.—Houston [1st Dist.] 1995, no pet.). An offense of possession of marihuana in
Texas ranges from a class B misdemeanor if the amount in possession is two ounces
or less, to the equivalent of a first-degree felony if the amount of marihuana possessed
is more than 2,000 pounds. Tex. Health & Safety Code Ann. § 481.121 (Vernon
Supp. 2003). In Winter, the suspected offense was evading arrest, which could be
either a class A or class B misdemeanor. 902 S.W.2d at 474. In determining that the
offense was “jailable,” we held that the case was distinguishable from Welsh, and that
Welsh did not apply. Id. Consistent with our opinion in Winters, we hold that, in this
case, because possession of marihuana is a jailable offense, Welsh does not apply.
          We now turn to the facts of this case to determine, under McNairy, whether
exigent circumstances existed, which justified an entry without a warrant. Here, just
as in McNairy, the officers approached a building where there was suspicion of
narcotics dealings, and, after removing appellant and Porter from the doorway, the
officers did not know if anyone still remained inside. Also, as in McNairy, the
evidence could have been quickly destroyed. Officer Lane testified that the marihuana
could have been quickly destroyed simply by flushing it down the toilet. Accordingly,
we hold that because the officers in this case did not know who remained inside the
apartment, they were justified in entering the apartment to look for suspects to prevent
the destruction of the evidence
Scope of Authority to Search, and the Plain View Doctrine
          When exigent circumstances exist, such that officers are justified in entering a
home to prevent suspects from destroying evidence, the inspection should be limited
to those areas where a suspect could be hiding. See McNairy, 835 S.W.2d at 107. In
McNairy, upon holding that exigent circumstances existed, the court held that the
officers “were justified in entering appellant’s trailer to check for suspects who might
have so destroyed evidence.” Id. (emphasis added). In McNairy, after the officers
checked the mobile home for suspects, they waited for a search warrant before they
proceeded to search any further. Id. at 103. 
          While inside of a residence, officers may seize evidentiary items found in plain
view if the following two requirements are met: (1) the initial intrusion was proper,
or the police had a right to be where they were at when the discovery was made; and
(2) it was immediately apparent to the police that they had evidence before them. 
Green v. State, 866 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1993, no pet.).
          In this case, the record reflects that Officer Lane looked in potato chips cans,
drawers, and paper bags during his initial entry into the apartment. In so doing, Lane
exceeded the scope of a search conducted for the purpose of finding suspects who
could destroy evidence. Any items found by Officer Lane while he was exceeding the
scope of his authority are not subject to being seized by virtue of the plain view
doctrine. Items that were in plain view, such as the burning marihuana cigarette on
the coffee table, or the “water pipe” on top of the refrigerator, are subject to the plain
view doctrine and could have validly been seized by Officer Lane during his initial
entry to prevent the destruction of evidence. 
Consent to Search
          We now determine whether the evidence seized by Officer Lane that was not
in plain view was nevertheless admissible because of the later voluntary consent to
search by appellant. Consent to search is an established exception to the Fourth
Amendment requirements that police have a warrant and probable cause to enter a
residence. Brimage, 918 S.W.2d at 480. In cases in which consent follows an illegal
arrest, courts have analyzed the consent to determine if it was tainted by the illegal
police conduct. See e.g., Brick v. State, 738 S.W.2d 676, 677 (Tex. Crim. App. 1987);
(holding that the court of appeals erred in declining to consider whether the arrest was
illegal and whether the consent was tainted by the potentially illegal police activity). 
The primary purpose of determining whether consent is tainted is to ensure that
evidence that is the fruit of an unreasonable search or seizure by police is not
admissible in court. Wong Sun v. U.S., 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)
(when evidence results from illegal actions of police, the issue is “whether, granting
establishment of the primary illegality, the evidence to which instant objection is made
has come at by exploitation of that illegality or instead by means sufficiently
distinguishable to be purged of the primary taint.”). Accordingly, we will determine
in this case whether consent following an illegal search was tainted by the police
illegality. 
          The Texas Court of Criminal Appeals has previously indicated that, when
consent follows an illegal entry onto property, the consent must be analyzed, using the
factors set out in Brick v. State, to determine whether consent has been tainted by the
illegal police conduct. Leal v. State, 773 S.W.2d 296, 297 (Tex. Crim. App. 1989)
(granting discretionary review to consider “whether taint stemming from the unlawful
entry was sufficiently attenuated under the test announced in Brick v. State . . . [such]
that the consent could be deemed valid.”). Although the police conduct complained
of in Brick was an illegal arrest, the factors set out by that court are still helpful in
determining whether the taint from an illegal search has been attenuated.
          The Brick factors are (1) the proximity of the consent to the arrest; (2) whether
the seizure brought about observation of the particular object for which they sought
consent to search, or, in other words, whether the illegal arrest allowed officers to
view the area or contraband that the officers later received consent to search; (3)
whether the illegal seizure was flagrant police misconduct; (4) whether the consent
was volunteered rather than requested by the detaining officers; (5) whether the
arrestee was made fully aware of the fact that he could decline to consent and, thus,
prevent an immediate search; and (6) whether the police purpose underlying the
illegality was to obtain the consent. Brick, 738 S.W.2d at 680-81.
          The record indicates that, in this case, appellant gave consent outside of the
apartment after the initial entry by the police. The close temporal and spatial
proximity of the consent to the illegal conduct makes the first factor favorable to
appellant. With regard to the second factor, the testimony of Officer Lane was that he
could see a marihuana cigarette and a “water pipe” from the doorway. Lane did not
act illegally to observe those two items. The marihuana found in the potato chips can,
and the marihuana in the brown paper bags, however, were only observed after Lane
exceeded the scope of his search for suspects. We hold that the second factor does not
clearly favor either appellant or the State.
          In analyzing the third factor, we do not see any evidence of flagrant police
misconduct. Courts usually do not deem police misconduct as “flagrant” unless the
illegal conduct was engaged in for the purpose of obtaining consent, or the police
misconduct was calculated to cause surprise or fear. See e.g., Brown v. Illinois, 422
U.S. 590, 605, 95 S. Ct. 2254, 2262 (1975) (holding that police misconduct had a
“quality of purposefulness,” and was “calculated to cause surprise, fright, and
confusion.”); Garcia v. State, 3 S.W.3d 227, 243 (Tex. App.—Houston [14th Dist.]
1999, pet. granted) (stating that police conduct is flagrant if it is for the purpose of
obtaining the consent) aff’d, 43 S.W3d 527 (Tex. Crim. App. 2001); Renfro v. State,
958 S.W.2d 880, 886 (Tex. App.—Texarkana 1997, pet. ref’d) (no flagrant conduct
where police did not calculate to cause surprise or fear). The record in this case
indicates that the police officers exceeded the lawful scope of their search of the
apartment, but there is no evidence that appellant, who was outside of the apartment,
even knew of the illegality. Because it does not appear from the record that the
purpose of the police illegality was to obtain consent, or to cause surprise or fear, we
hold that the third factor favors the State. 
          The fourth factor, whether the consent was volunteered or requested by the
police, favors appellant because Officer Lane approached appellant to request his
consent. The fifth factor, whether appellant was aware that he could refuse to give
consent to search, favors the State. The written consent form, signed by appellant,
stated in writing that appellant had the “right to refuse consent to such a search.” 
          The sixth factor, whether the police engaged in the illegal conduct for the
purpose of obtaining consent, favors the State. In our discussion of the third factor,
we already determined that the police misconduct was likely not for the purpose of
obtaining appellant’s consent. 
          While two of the six factors favor appellant, we hold that the State has met its
burden of proving that the taint of the illegality was sufficiently attenuated. It is
significant that appellant was outside of the apartment while the illegal police conduct
was occurring. The record does not indicate that appellant had any way of knowing
of the police misconduct inside of the apartment. Accordingly, because there is no
evidence that appellant was aware of the illegality in this case, it is not likely that his
consent was tainted by it.
           In determining that the State has met its burden of showing that the taint of the
illegal entry was sufficiently attenuated, we hold that the trial court did not err in
denying appellant’s motion to suppress evidence.
          We overrule point of error one.
Conclusion
          We affirm the trial court’s judgment.
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
 
Publish.